WILSTACH *v.* HAWKINS.

Complaint in two paragraphs—1. Upon a written contract for plowing and planting 40 acres of prairie land, at 175 dollars, 50 dollars payable in cash when the planting was done, and the balance payable in corn at 15 cents per bushel, from the crop, and if sufficient should not be produced, the deficiency was to be paid in cash. 2. Upon an account for plowing and planting 40 acres of prairie land, at 4 dollars and 50 cents per acre. Affidavit by defendant that there was but one contract, and motion in writing that plaintiff be compelled to elect upon which paragraph he would rely. The motion was overruled. *Held*, that this was not error.

In actions on contract, where a demand is necessary before suit, the failure to make or aver a demand is excused by an averment showing that the defendant is not in a condition to perform or offer to perform.

APPEAL from the *Tippecanoe* Court of Common Pleas.

HANNA, J.—*Hawkins* sued *Wilstach*. His complaint contains two paragraphs:

*Thursday,
June 14.*

1. Upon a memorandum of agreement between the parties.

2. For work and labor.

The writing is as follows:

"Memorandum of agreement, made this 11th day of *May*, 1857, between, &c. Said *Hawkins* agrees to break the s. e. s. e., sec. 29, t. 25, r. 6 w., in, &c., adjoining said *Hawkins*' land, to plant the same in corn in a good, farmer-like manner the present season, in the usual mode of planting sod land, for 175 dollars, of which 50 dollars to be paid as soon as corn planted, and the remainder to be paid by the crop raised, taking corn enough in the shock, in the field, to pay the balance at the rate of 15 cents per bushel, if enough is raised, if not enough, the deficiency to be made up in cash by said *Wilstach*," &c.

The first paragraph avers that the plaintiff performed, &c., and that the defendant did not perform in this "that he failed to pay the plaintiff the balance of 125 dollars, either by furnishing corn in the shock in the field, according to the terms of the contract, or in any other manner, but so to do, although often requested, has failed and refused," &c.

The second is for breaking 40 acres of land at 4 dollars and 50 cents per acre.

The defendant filed his affidavit, stating that there never existed but one contract between the parties—that attempted to be embodied in the writing sued on, and that both paragraphs were based upon the same supposed cause of action; and, also, his written motion, that the plaintiff be compelled to elect upon which paragraph he would rely.

The Court overruled the motion, to which ruling, the record of the clerk states, the defendant excepted. There is no bill of exceptions embodying the affidavit, or the motion and ruling thereon.

We cannot perceive that the Court erred in this ruling. Whether the affidavit of a party would be sufficient in any instance to base such a motion upon, we need not decide, as we do not believe the facts in this case are such as required an order of the kind by the Court.

The defendant demurred to the first paragraph of the complaint, because it did not state what the deficiency was, nor did it specially aver a demand of the corn or of the money, &c. The demurrer was overruled.

It is insisted with much earnestness by the defendant, that the proper construction of the contract would require the plaintiff to shock the corn, husk it, and measure it, and then show to, and demand of, the defendant the balance, or deficiency, if any; and that the complaint should, by proper averments, charge these things to have been done.

We do not so construe the contract, the main features of which were, that the plaintiff was to break and plant a certain number of acres of land, for which the defendant was to pay 175 dollars—50 dollars when the planting was done. Corn that might be produced by such planting was to be taken at a fixed price per bushel in the shock in the field. Of course certain labor was necessary to place it in shock before it was in a condition to be taken by the plaintiff. As no direct agreement was made by these parties as to who should perform, or be at the expense of, that labor, we are clearly of opinion it fell upon the owner of the corn; and if he failed, as is alleged, to cause it to be so placed in shock, he would not have the crop so raised, in the condition necessary to enable him to perform, or offer to perform, his part of the contract as to the delivery of said corn. It is manifest that a sufficient excuse is, therefore, shown for not making or averring a special demand of the corn, even if such demand was necessary.

The defendant answered to the second paragraph of the complaint:

1. A general denial.

2. That he never made any contract other than the written one, &c.; that he did not agree by said contract to put said corn in shock; that the crop lies neglected and spoiling; that defendant has paid 57 dollars, &c., and has performed, &c.; That *Hawkins* has made no demand on him for said crop, nor offered to receive the same.

As well as we can gather from the record, the above con-

tains the substance of those parts of the answer not stricken out.

Upon motion of the plaintiff, a portion of the answer to said second paragraph was stricken out, but no bill of exceptions appears in the record containing the parts so stricken out, and the insertion thereof by the clerk does not bring the same before us in proper form to enable us to pass upon the ruling of the Court.

The answer to the first paragraph is, that the defendant reiterates and reaffirms each and every allegation and averment in the second paragraph of his answer to the second of the complaint. There was no demurrer to this answer.

A general denial, by way of reply, was filed to that as well as the second paragraph of the answer to the second paragraph of the complaint.

Trial by the Court; finding for the plaintiff; and judgment, over a motion for a new trial, for 125 dollars.

The evidence is not in the record; we must, therefore, presume it was sufficient to sustain the finding.

*Per Curiam.*—The judgment is affirmed with 3 per cent. damages and costs.

*H. W. Chase* and *J. A. Wilstach*, for the appellant. (1)
*J. M. La Rue* and *D. Royse*, for the appellee. (2)

(1). The counsel for appellant argued as follows :

This claim, in the most favorable view of it for the appellee, was, in substance, for the delivery of specific articles (bushels of corn) in a case where the day of delivery was left undetermined. In all such cases, a special demand before suit must be averred and proven with circumstantiality of time and place. *Frazee* v. *McChord*, 1 Ind. R. 224.—*Peters* v. *Gooch*, 4 Blackf. 515. And a general averment, though often requested, *licet sœpius requisitus* (as in the complaint), will not do. *Worley* v. *Mourning*, 1 Bibb, 254.—*Miller* v. *Alcorn*, 3 *id.* 267.—6 Hill, 297. And the want of such averment of demand is fatal, even after default, or after issue and verdict. *Horine* v. *Best*, 2 Bibb, 550.—*Gibbs* v. *Stone*, 7 Mon. 303. Where payment is to be made in something besides money, the institution of a suit (which is a legal demand for money only) is premature unless preceded by a demand for the payment provided for by the contract, and until such demand be first shown, the defendant is not bound to prove anything in defense. 1 Iowa, 396. In *Cook* v. *Ferral*, 13 Wend. 287, in which the claim was for a hundred bushels of oats to be delivered in a few days, at two shillings per bushel, a demand was held necessary before suit, and, though no objection was made on the trial, still the want of

an allegation of demand was held a substantial defect, going to the foundation of the plaintiff's action, and good ground for reversing the judgment. The brevity of pleading authorized and required by the revised code, of course does not justify the omission of substantial averments in pleadings, but renders their introduction all the more imperative. "The plaintiff must state the facts constituting his cause of action," is the language of the code. 2 R. S. p. 38, § 49. The identical question, however, has arisen in *New York*, under a code from which, in this particular, ours is a mere transcript. *Carpenter* v. *Brown*, 6 Barb. 150, decides "that where an actual request is necessary, it must be laid specially." The appellee has no ground to argue in favor of any presumption that this demand (though not averred) was proven on the trial, because the Court expressly ruled upon the demurrer that no such question was before the Court, and the appellant then and there reserved the point for this Court by his exceptions duly taken. Besides, the rule maintained by all the authorities is that the demand must be both averred and proven. *Frazee* v. *McChord*, and the other authorities cited, *supra*.

The appellant, however, desires to go further, and show that the appellee, even though he should bring a new suit after demand, can never cure his neglect of the crop and his failure to ascertain its amount. This point will arise in the discussion of the errors assigned, which we proceed to discuss in the order of their assignment.

*First.* The error in overruling the motion to compel the plaintiff below to elect on which paragraph of his complaint he would rely, and to strike out the other.

In *New York*, where the code as to the nature of the complaint is the same in substance as ours, this point is decided in several cases cited by *Voorhies*, in his Treatise on the Code, p. 154: "As there can be but one substantially true statement of a single cause of action, the practice of setting it forth in different counts is necessarily abolished. A merely formal one is unnecessary, while a substantial one would involve a contradiction, and one must be false." (Strong, J., *Lackey* v. *Vanderbilt*, 10 How. Pr. R. 161.) "If a plaintiff, having really only one cause of action, set it forth in several counts or divisions in his complaint, the remedy of the defendant is by motion that the plaintiff elect on which count he will rely, and that the others be struck out." "The motion should be supported by evidence in some way that the several counts are all based on one and the same cause of action." (*Ibid.*) "That evidence is usually the affidavit of the defendant." Voorh. Code, p. 154, note *d*, and see the other authorities there cited. See 2 R. S. pp. 44, 46, §§ 77, 92.

*Second.* The error in overruling the demurrer.

The first ground of demurrer is, that the complaint does not state what the "deficiency" provided for in the contract was (if any). By the express terms of the contract, *Wilstach* was only to be liable for this deficiency. The work is to be paid for "by the crop raised." But if not enough is raised, "the deficiency is to be made up in cash by said *Wilstach.*" *Wilstach*, as admitted by the complaint, has paid the 50 dollars he stipulated to pay on the corn being planted. He has done all that he contracted to do except to pay this deficiency, if there is any deficiency. Now, it is arithmetically and legally impossible to ascertain what this deficiency is, without first stating the crop and setting down its value. The price, 15 cents per bushel, is fixed so that the calculation could be readily made. *Hawkins* is clearly bound to exhaust the corn

May Term,
1860.

WILSTACH
v.
HAWKINS.

before looking to his employer for money. It is obvious from the whole provisions of this contract that *Wilstach* was to have nothing to do with the farmership of this crop. The field, as the contract shows, adjoined *Hawkins'* field. He agrees to do the work in a farmer-like manner. He agrees to "break" the ground, to "plant" it, and to "take" corn enough to pay him if enough is raised. He even undertakes the furnishing of the seed-corn, *Wilstach* furnishing the money, 7 dollars. *Hawkins* is, then, throughout, the working man in this contract, *Wilstach* agreeing only to furnish money and not work. It won't do to say (as the appellee's attorneys did in the lower Court, and will probably repeat in this,) that *Wilstach* was to shock the corn, because, in the first place, *Hawkins* is to be paid "by the crop raised" by his own labor; and, secondly, the provision that he should take it in the shock is for his benefit, that he may have shocks as well as corn—a natural provision for a farmer to make in his own behalf. No! he must not only shock it, but go further. After shocking it, he must *husk* it, and then *measure* the ears of corn, so as to know whether he has too little or too much to pay him. Says *Pothier*, in his Treatise on Obligations, pt. 3, c. 1, No. 512: "If I have sold the wine of my vineyard" [here "the crop raised"] "to a merchant, the delivery ought to be made in my repository," [here the contract itself says the corn shall be taken in the field,] "where the wine" [corn] "is. He should send for it there, and load it at his own expense. My obligation is to deliver it to him where it is. And I am not obliged to take it up, but merely to give him the key, and permit him to do so. This is conformable to the law 47, § 1, ff. de leg. 1. *Si quidem certum corpus legatum est ibi praestabitur ubi relictum est.*" Again, says *Pothier*, in the same connection, § 513: "Agreements ought, in respect to the things which are not expressed by the parties, to be interpreted rather in favor of the debtor, than of the creditor, *in cujus potestate fuit legem opertius dicere.*"

The complaint does not allege that there was any deficiency whatever, whence the clear inference is that there is no cause of action against said *Wilstach*, but the 125 dollars must have been all paid "by the crop raised."

We only ask that in the construction of this contract, the rule laid down by Judge DAVISON, in *Maggart* v. *Chester*, 4 Ind. R. 124, may be applied: "The Court will look into the whole agreement, and give it a construction consonant to the intention of the parties."

Says PARKER, J., in *Sumner* v. *Williams*, 8 Mass R. 214: "The situation of the parties, the subject-matter of the contract, and the whole scope of their agreements will be taken into consideration in determining the legal effect of their contract."

Should the Court be of opinion that the true import and meaning of the agreement is doubtful, and that the intention of the parties cannot be determined from its language, "the right doctrine is," says FLETCHER, J., in *Barney* v. *Newcomb*, 9 Cush. 56, "that it shall be construed most strongly in favor of him who has been misled, and has advanced his money upon it."

In the U. S. Dig. of 1854, tit. Agreement, p. 21, No. 84, a case is stated, where although a party has promised to pay money on request, yet because it was apparent from the whole scope of the contract that the raft of logs purchased was to be floated to defendant's wharf, he was held not liable to pay even after demand made and proved, until the raft should be floated thereto. *Kennaird* v. *Jones*, 9 Grat. (Va.) 183. So here the whole scope of the agreement shows that the crop was first to be gathered and measured before *Wil-*

*stach* could be called on for any more money; and in this view, it is immaterial on whom it fell to gather the crop. If on *Wilstach*, no demand has yet been made on him to deliver it; if on *Hawkins*, he should account for the crop, and deducting it from 125 dollars, show how much money is due him, if any.

In *The State* v. *Beard*, 1 Ind. R. 461, Judge PERKINS has well remarked, that if a person agree to perform labor and take his pay in a specific article, and there be no fraud or warranty, he will be bound thereby though the article be of less value than he supposed. Is not this doctrine applicable here? Has *Hawkins* any right to throw up and abandon the corn crop, though it be a meagre one, but is he not compelled to take it in payment as far as it will go?

The appellee will probably endeavor to defend this complaint as having been drawn under the form contained in 2 R. S. p. 343, No. 8. It has been doubted by this Court whether these forms have any legal existence—there being a defect in the title of the act whereby they are supposed to be authorized. *The State* v. *Wilson*, 7 Blackf. 516. This form, however, was evidently intended by its framers only for complaints for specific performance, as its tenor and even its title imports: "On an agreement in writing—specific performance—damages for breaches." But the appellee having no taste for the performance of contracts (either specifically or generally), repudiates this clause, and introduces in its place—what? A fictitious demand for work and labor, which he must have known, as sworn to by the appellant, to be false and a sham, and which it was the duty of the Court to reject. 2 R. S. pp. 44, 46, §§ 77, 92.

It may be urged by the appellee that he declares in his complaint that he "performed all the conditions on his part." This general language, it is true, is authorized by statute. 2 R. S. p. 45, § 84. But he proceeds himself to qualify it by showing that he is unable to make any statement of the crop raised, and consequently of the deficiency which is the gist of his action; and it is idle to say that he has performed all the conditions on his part to enable him to bring a suit, when he confesses that one of the conditions he has wholly neglected. The general language used is insufficient as an allegation of demand, and certainly cannot be taken to mean that which the party himself by his pleading denies to be its meaning. But even in allowing general pleading of a condition precedent, the statute does not release a party from his obligation to show this performance. 2 R. S. p. 45, § 84. The appellee, however, impliedly says there is no such condition, which the agreement (as much a part of the complaint as any other) says there is, and the Court below assist him in ignoring and repudiating this condition, which to claim now as embraced within the formal words of a printed precedent, comes from him with a poor grace.

We earnestly urge the Court to decide this point fully. It was unquestionably the duty of *Hawkins* to gather and measure the corn (whether more or less was raised) to the extent of his claim upon it, and after finding its value at the rate of 15 cents per bushel, to apply to *Wilstach* for the deficiency it showed in paying the 125 dollars. In this case, any reasonable man may well see there would be little probability of a suit between these parties. Several of the authorities hereinafter cited are applicable to this point, and the attention of the Court is solicited to them.

This point disposes of the case at once and forever, and renders the other

May Term,   questions unimportant; but as they have been assigned, we proceed with their
1860.      discussion.

WILSTACH        The second ground of demurrer is that the complaint does not aver a de-
v.          mand made for the corn raised.  This point is fully discussed above, and is
HAWKINS.    incontestably with the appellant.

See, further, *Johnson* v. *Powell*, 9 Ind. R. 568.

On an agreement to pay in farm produce, the demand must be made at the
debtor's farm.  *Lobdell* v. *Hopkins*, 5 Cowen, 516.  The work done was a job
of clearing.

*Third.*  The error in striking out parts of defendant's answer to the com-
plaint.

In *Port* v. *Williams*, 6 Ind. R. 219, and same parties, 9 *id.* 551, this Court
decide that where matter in an answer is pertinent to the case and not a sham
defense, it cannot be struck out on motion.  "A motion to strike out (say the
Court) does not perform the office of a demurrer either under the old or new
practice.  Whether it was a sufficient defense to bar the action was wholly im-
material.  It was; at least, such pertinent matter as the Court ought not to
strike out on motion.  It was not so irrelevant as to warrant that; it was not
a sham defense.  2 R. S. p. 44.  We are, therefore, of opinion that the Court
erred in sustaining the motion to strike out."  This language is in every word
applicable to the answer now under consideration, and is decisive of this point.
Indeed, the answer contains good matter even in bar of the action.  The case
of *Johnson* v. *Baird*, 3 Blackf. 153, 182, and the numerous class of authorities
which has followed, shows that when time and place are both named, the de-
fendant bars the action if he set apart the articles, and even is excused if he
show a readiness at time and place to deliver.  Is this rule any less applicable
where, the time being indefinite, the defendant shows that he has always been
ready to deliver, more especially when it is shown that the plaintiff had the
whole control of the subject-matter of the contract.

But even should the Court incline to think (which we scarcely can think
they will) that the matter is not good in bar, yet the answer was clearly perti-
nent.  Its object was threefold :

1st.  To show the contemporaneous circumstances.

2d.  To show the usage and custom of farming sod land.

3d.  To explain the ambiguities in the contract.

Each was a legitimate object.

The reason in each case is a comprehensive and all-sufficient one (*i. e.*, ad-
mitting, for the sake of the argument, that the agreement raises doubts), and
that reason is, that without the aid of parol evidence, the written contract can-
not be applied to its proper subject-matter.  *Bradley* v. *The Washington, &c.,
Packet Co.*, 13 Peters, 89.—*The Mechanics' Bank* v. *The Bank of Columbia*, 5
Wheat. 337.—*Maggart* v. *Chester*, cited *supra.*—*Conwell* v. *Pumphrey*, 9 Ind. R.
135.—*Port* v. *Williams*, 6 *id.* 219.—*Trullinger* v. *Webb*, 3 *id.* 198.—*Rex* v. *Lain-
don*, 8 T. R. 382.—Roberts on Frauds, p. 11.

The Court, in its construction of this contract, is compelled to know or ask
what the term "corn raised," and "the raising of corn," mean, as applied to
sod land.  Is, or is not anything further necessary or proper, than merely
breaking and planting?  The agreement requires the planting to be done in a
"good, farmer-like manner," and refers in terms to "the usual mode of plant-

ing sod land." It seems material to know (in case of doubt) whether any-
thing more was to be done after the planting towards raising the crop, because
if nothing more, then certainly *Wilstach* had no hand in raising the crop, and
the whole charge of it falls upon *Hawkins.*

These questions would probably suggest themselves on the very face of the
agreement, but whether they do or not is immaterial. The doctrine of one of
the most recent decisions is as follows: "If the words used in a contract are
technical, or local, or generic, or equivocal, on the face of the contract, or
made so by proof of extrinsic circumstances, parol evidence is admissible to
explain by usage their meaning in the given case." *Brown* v. *Brooks*, 25 Penn.
State R. (1 Casey), 210. This doctrine is called that of annexing customary
incidents. "It constitutes an exception to the general rule that an instru-
ment, complete on its face in all its parts, and importing to be the exclusive
expositor of the sense of the parties, shall not receive additions from parol
evidence. The cases go on the principle of a presumption that in such trans-
actions, the parties did not intend to express in writing the whole of the con-
tract by which they intended to be bound, but to make a contract in reference
to these known usages." Per PARKE, Baron, in delivering the judgment of
the Court in *Hutton* v. *Warren*, 1 M. and W. 466.—4 Phil. Ev. (ed. of 1850),
C. and H.'s notes, part 2, p. 562.—Story on Cont., §§ 670, 671 a.—1 Greenl.
Ev., §§ 286, 287, 288, 292. This doctrine will have the greater force in an
agreement where the most casual inspection shows, as its title imports, it was
not the full agreement between the parties, but only a memorandum—only the
jotting down—it wants even grammatical construction—of such parts of the
contract as it was thought at the time it would be desirable to preserve in a
written form. Evidently the memorandum was written without any expecta-
tion, on the part of the appellant, of the happening of an insufficient crop, and
the consequent necessity or utility of proving the customary mode of raising
corn on sod land. It is easy also to see that if the crop had been a full one, the
appellee would have exhibited a liberal and ample compliance with the rule in
*Pothier!*

*Eaton* v. *Smith*, 20 Pick. 150, was an action on a bond, in which the
phrase to operate on land was used, and the defendant was permitted to intro-
duce evidence that the word operate, as applied to eastern timber lands, was
understood in *Maine* to include selling stumpage; that is, selling off the tim-
ber growing, to be cut and removed by the purchaser. The Court (C. J.
SHAW) say: "That when a new and unusual word is used in a contract, or
when a word is used in a technical and peculiar sense, as applicable to any
trade or branch of business, or to any particular class of people, it is proper to
receive evidence of usage to explain and illustrate it."

Again. Who was to "shock" the corn? and who was to measure it?
These questions are not answered by the contract in express terms, and we are
authorized to look beyond it. A very late case holds this langurge: "Ex-
trinsic parol evidence is always admissible to give effect to a written instrument
by applying it to its proper subject-matter, by proving the circumstances under
which it was made, thereby enabling the Court to put itself in the place of the
parties, with all the information possessed by them, the better to understand
the terms employed in the contract, and to arrive at the intention of the parties."
*Hildebrand* v. *Fogle*, 20 Ohio R. 147.

"Technical words and surrounding circumstances, which materially affect

May Term,
**1860.**

WILSTACH
v.
HAWKINS.

May Term,     their meaning, are to be interpreted by the jury." Per Judge STORY in *Wash-*
   1830.      *burn* v. *Gould,* 3 Story's C. C. R. p. 162.

WILSTACH          "In the construction of contracts, the first rule is to make them speak the
   v.         intention of the parties as gathered from the entire transaction. Other rules
HAWKINS.      are subordinate to this, and when they contravene it, are to be disregarded."
              *Gray* v. *Clark,* 11 Verm. R. 583.—*Kelly* v. *Mills,* 8 Hammond, p. 225.

                  "This is the great rule of interpretation," says PATTERSON, J., in 4 Dall.,
              p. 347.

                  In *Vance* v. *Bloomer,* 20 Wend., p. 199, it is said: "In the very learned case
              of *Roberts* v. *Beatty,* 2 Penn. R. 65, Ross, J., there said: 'We must consider
              the subject-matter of the agreement; the object of making it; the sense in
              which the parties mutually understood it at the time it was made; the place
              where it was entered into; the use to which any articles stipulated to be deliv-
              ered were to be applied; if materials for building, when and where to be used;
              and finally, the practical exposition and the general understanding, custom,
              and usage amongst those who enter into similar contracts in the execution and
              performance.

                  To the same effect are the authorities in this Court. *Dickson* v. *Kelsey,* 2
              Blackf., p. 189.—*Kelsey* v. *Dickson,* 3 Blackf., p. 236.—*Maggart* v. *Chester,* and
              *Conwell* v. *Pumphrey,* cited, *supra.*—*Port* v. *Williams,* and *Trullinger* v. *Webb,*
              *supra.*—*Lewis* v. *Matlock,* 3 Ind. R. 120.

                  It will probably be contended by the appellee that parol evidence is inadmis-
              sible to vary or contradict a written agreement, and set up a new one. This is
              conceded. 7 Ind. R. 547, per PERKINS, J.—6 *id.* 379.—8 Blackf. 237.—*Id.*
              277.—*Id.* 295.—2 Ind. R. 477.—*Id.* 656.—7 Blackf. 432.—6 *id.* 183. But the
              authorities are equally decisive that parol evidence is admissible to explain a
              written agreement, or even to add customary incidents as above shown, for this
              is not contradicting or varying the contract, but enforcing it in its strictly just
              and proper terms. *Rex* v. *Laindon, supra,* is, perhaps, the leading case in es-
              tablishing this distinction, and is worthy of a more extended notice than we
              are able at present to give it, as having the high, legal sanction of the names
              of Lord *Kenyon* and his colleagues *Grose, Lawrence,* and *Le Blanc,* each of
              whom delivered opinions. It was a case in which the Court allowed the intro-
              duction of a new word, "apprentice," by parol into a written agreement. And
              where fraud is alleged a written agreement may be even annulled or substan-
              tially varied by parol evidence. *Irwin* v. *Ivers,* 7 Ind. R. 310.

                  The facts set up in the clauses of the answer which the lower Court struck
              out, especially the latter clause, might well induce a jury to say that the appel-
              lee had forfeited his right to recover anything, and would even authorize the
              appellant to have made a counter-claim that his 57 dollars be returned to him.

                  It may be said by the appellee that the allegations in the answer are, in some
              instances, "as the defendant is informed and believes." It has been decided
              in *New York,* under a similar code, that allegations, even in the complaint, may
              be on information or belief when the facts are not presumptively within the
              peculiar knowledge of the party. Vansantvoord on the Code, p. 201.—*Howell*
              v. *Frazer,* 1 Code R., N. S., p. 270. No stronger allegation is necessary, even
              in an affidavit. *Simpkins* v. *Mallat,* 9 Ind R. 543.

                  (2) Counsel for the appellee argued as follows:
                  The appellant complains of the judgment of the Court below:

1. Because the Court below overruled his motion to compel the appellee to elect upon which paragraph of his complaint he would rely, and strike out the other. The evidence is not set out in the record, and, therefore, the Court cannot say but that evidence was given to the matters alleged in both counts. One count is on a special contract, and the other is the common count for work and labor. In the one an agreed price and mode of payment is alleged; in the other the plaintiff proceeds on a *quantum meruit*. At common law it was the practice, in actions like the present, to join, in the same declaration, a count on an instrument not under seal, with the common counts in assumpsit. 1 Chit. Pl. (4 Am. ed.), p. 392.—3 Blacks. Comm., p. 295. Our statute has not changed the common law in this particular, and the practice has prevailed in this state without question, except in the case of *Bates* v. *Dehaven*, 10 Ind. R. 319, and there the Court plainly intimates that two paragraphs may be "based upon one cause of action."

In cases like this, the authorities show the importance of setting up the claim in different forms in the same complaint. *Coe* v. *Smith*, 1 Ind. R. 267.— *McKinney* v. *Springer*, 3 Ind. R. 59.

The policy of our statutes is to allow parties to determine their controversies in one proceeding. 2 R. S. p. 37, tit. complaint, p. 39, tit. answer. "Where there are several counts, one good one among them will support a general verdict for the plaintiff." Perk. Dig., p. 635, and authorities cited.

The *New York* code differs from ours. The section prescribing the forms of pleading, as cited in *Voorhies' New York* code, is as follows: "All the forms of pleading heretofore existing are abolished, and hereafter the forms of pleading in civil actions in Courts of record, and the rules by which the sufficiency of the pleadings are to be determined, are those prescribed by this act." The distinction between the *New York* code and ours (2 R. S. p. 37, § 47) is apparent. The *New York* code abolishes "all the forms of pleading heretofore existing" in that state. Ours only abolishes those inconsistent with the provisions of the practice act. The old practice of adding one or more common counts to a count on a special contract, is not inconsistent with the provisions of our practice act, and, therefore, not abolished.

2. He complains because the Court below overruled the demurrer filed by him to the first paragraph of the complaint. The causes of demurrer are specially set forth, and by reference to the demurrer and first paragraph of the complaint it will be readily perceived that the demurrer is not well taken. The complaint avers that the appellant wholly failed to perform the stipulations of his contract, "either by furnishing corn in the shock in the field, according to the terms of said contract, or in any other manner, but so to do, although thereunto often requested, has hitherto wholly neglected and refused," &c. No deficiency was to be ascertained by the appellee, because the appellant had failed to put the corn in shock, as it was unquestionably his business to do by the terms of the contract. If this was not the intention of the parties, why use the words "in the shock in the field?" This was to be the condition of the corn when taken by the appellee, and if the appellant failed to put it in that condition, he became liable to pay the contract price for the work in money.

There are further reasons why the judgment of the Court below should be affirmed. The evidence is not set out in the record, and by the provisions of 2 R. S. p. 163, § 580, "where the merits of a cause have been fairly tried and

determined, a judgment will not be reversed, although error may have intervened." *Rockhill* v. *Spraggs*, 9 Ind. R. 30. See, also, 3 Ind. R. 385, 430, as to the presumption arising when the party appealing fails to set out the evidence.